NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BERTARA RAY,<br><br>      Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY,<br><br>      Defendant. | Civil Action No.: 13-cv-142 (CCC)<br><br>**OPINION** |

**CECCHI, District Judge.**

**I. INTRODUCTION**

Bertara Ray ("Plaintiff") appeals the final determination of the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying Plaintiff disability benefits under the Social Security Act. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This motion has been decided on the written submissions of the parties pursuant to Federal Rule of Civil Procedure 78.[1] For the reasons set forth below, the decision of the Administrative Law Judge (the "ALJ") is affirmed.

**II. BACKGROUND**

 **A. Procedural History**

Plaintiff applied for disability insurance benefits ("DIB") and supplemental security

---

[1] The Court considers any arguments not presented by the parties to be waived. See Brenner v. Local 514, United Bhd. of Carpenters & Joiners, 927 F.2d 1283, 1298 (3d Cir. 1991) ("It is well established that failure to raise an issue in the district court constitutes a waiver of the argument.").

income ("SSI," collectively "Benefits") under Title XVI from the Social Security Administration ("SSA") in the fall of 2009. (R. 139-43.) Plaintiff alleged disability beginning on June 14, 2009. (R. 139.) Plaintiff claimed that back pain limited her ability to work. (R. 161.) Plaintiff's claim was denied initially on June 4, 2010 (R. 73-75), and denied upon reconsideration on September 18, 2010. (R. 82-86.) The ALJ held a hearing in this matter on November 17, 2011. (R. 30.) At this hearing, Plaintiff testified that her sinusitis contributed to the loss of her employment. (R. 35-37.) In a written opinion dated December 19, 2011, the ALJ determined Plaintiff was not disabled. (R. 14-25.) The Appeals Council denied review on November 26, 2012, rendering the ALJ's decision the final judgment of the Commissioner. (R. 1-3.) Plaintiff timely filed this action.

**B.     Personal And Employment Background**

Plaintiff has completed one and a half years of college, participated in a vocational training program in computerized customer service, and has a paraprofessional certification as a teacher's assistant. (R. 39-40.) In the fifteen years before she claimed disability, Plaintiff has worked as a childcare provider, cook, cheerleading coach, and in customer service and sales positions. (R. 187.) Plaintiff alleges that she could no longer work as of June of 2009, when she was fired from her last job. (R. 58-59.) Plaintiff claims she was terminated because she had to miss five days of work due to a sinusitis attack and ran out of vacation and sick days. (Id.) Plaintiff also claims to have lost a job in 2007 because her sinusitis forced her to take off more sick days than she had accumulated. (R. 36.)

The Vocational Expert at Plaintiff's hearing before the ALJ characterized Plaintiff's past customer service work as sedentary, and her past sales and customer assistance jobs as light work. (R. 60-61.)

### C.     Medical Background

Plaintiff alleges her back pain began when she slipped and fell in February of 2008. (R. 33-34.) Plaintiff was prescribed a walker in early 2011 after she claimed to be falling periodically. (R. 41-42.) However, Plaintiff testified that she only needs to use the walker to make longer trips, and can stand up for around 40 minutes without it. (R. 43.) Plaintiff also alleges that she suffers from depression (R. 52-54), sleep apnea (R. 55-56), and sinusitis, a condition for which plaintiff testified that her doctor periodically prescribes multiple days of bed rest. (R. 35-36.) Plaintiff is five feet five inches tall and weighs around 250 pounds. (R. 38-39.) Plaintiff testified that her weight does not inhibit her day-to-day activities. (Id.)

In a report dated November 6, 2008, Dr. Philip Delli Santi detailed the findings of his August 25, 2008 examination of Plaintiff. (R. 213-15.) His report diagnosed Plaintiff with a lumbar strain, sacrum sprain/strain, and segmental dysfunction of the lumbar and sacrum. (R. 214.) Dr. Santi found that spinal x-rays taken on the date of examination revealed no abnormalities other than a decrease L5-S1 disc space. (R. 214.) However, the report further states that Plaintiff had suffered permanent severe injuries of her lumbar spine. (R. 215.)

On May 19, 2010, consultative examiner Dr. Mariam Rubbani examined Plaintiff. (R. 246-47.) Plaintiff reported experiencing low back pain and numbness. (R. 246.) Dr. Rubbani's report states that there was "an impression of bilateral posterior superior iliac spine/facet dysfunction and posterior element dysfunction," as well as "an impression of lumbar radiculopathy." (R. 247.) The report nevertheless found that Plaintiff's ranges of motion were full with the exception that hip ranging was limited due to lower back pain. (R. 246.) The report further states that Plaintiff suffered no sensory loss, muscle weakness, or reflex loss, aside from decreased sensation in the right L5 and S1 dermatomes. (R. 247.) The report notes that Plaintiff was able to squat without

pain and had full grip and pinch strength. (R. 246.)

On May 23, 2010 Dr. Samuel Wilchfort indicated that an x-ray of Plaintiff's spine revealed no abnormalities. (R. 250.)

On June 3, 2010, state agency physician Dr. Joseph Udomsaph performed Plaintiff's Physical Residual Functional Capacity Assessment. (R. 251-58.) Dr. Udomsaph concluded that Plaintiff could occasionally lift twenty pounds and frequently lift ten pounds, and could stand, walk, and/or sit for six hours in an eight-hour workday. (R. 251.) The report further states that Plaintiff could frequently balance and occasionally climb a ramp or stairs, stoop, kneel, crouch, or crawl. (R. 253.) The report notes no manipulative, visual, or communicative limitations. (R. 254-55.) The report recommends that Plaintiff not have concentrated exposure to extreme cold or heat, wetness, humidity, fumes, or odors, and avoid even moderate exposure to hazards like machinery or heights. (R. 255.) Finally, Dr. Udomsaph opined that Plaintiff's injury was only partially proportionate to her reported symptoms and partially consistent with the reported effects it had on Plaintiff's functionality. (R. 256.)

Dr. Kumar Ramdas, Plaintiff's internist, provided several reports that the ALJ considered. In a report dated August 2010, Dr. Ramdas indicated that Plaintiff had suffered a tear in her lumbar spine in September of 2009. (R. 263.) This report opines that Plaintiff's condition would worsen with time and was untreatable. (Id.) However, the report indicates that Plaintiff, although limited in her ability to stand, walk, and sit, could do each for up to eight hours per day. (R. 264.) It also opines that Plaintiff could lift ten pounds but was limited in pushing and pulling due to weakness in her limbs. (Id.)

On December 3, 2010, Dr. Ramdas filled out a Multiple Impairment Questionnaire for Plaintiff. (R. 433-40.) This report estimated that Plaintiff's pain was between a two and a three on

a ten-point scale, but that Dr. Ramdas was able to fully alleviate it with medication. (R. 435.) He also indicated that Plaintiff could stand or walk for up to two hours per day, and could sit for up to eight hours per day. (Id.) However, he also found that Plaintiff could not lift or carry any weight. (R. 436.) Dr. Ramdas noted that Plaintiff's condition did not preclude her from keeping her neck in a constant position (R. 437), and only periodically interfered with her attention and concentration. (R. 438.) The report states that Plaintiff's emotional factors make her symptoms more severe, but that she is tolerant of low stress work. (Id.) Finally, Dr. Ramdas recommended that Plaintiff avoid noise, fumes, gases, heights, pushing, pulling, kneeling, bending, and stooping. (R. 439.)

Dr. Ramdas completed the same questionnaire again on November 11, 2011. (R. 547-54.) The new report noted that Plaintiff's back pain had spread to her knees and ankles (R. 547), that it was a nine or a ten in intensity, and that Dr. Ramdas could no longer alleviate it with medication. (R. 549.) The new report states that Plaintiff can only walk, stand, or sit for up to one hour, (id.) can lift and carry no weight (R. 550), and cannot keep her neck in a constant position. (R. 551.) This time, Dr. Ramdas concluded that Plaintiff's symptoms constantly interfered with her attention and concentration. (R. 552.)

An MRI dated November 22, 2011 indicated a normal impression other than a "[c]entral and slightly left-sided herniation of the nucleus pulposis associated with bulging and tear of the annulus fibrosus, with probable impingement to the left S1 root within the central canal." (R. 555.)

### III. LEGAL STANDARDS

#### A. Standard Of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g) and 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose their own

5

factual determinations," but must give deference to the administrative findings. Chandler v. Comm'r Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011); see also 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla, and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" Daniels v. Astrue, No. 4:08-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. Cruz v. Comm'r of Soc. Sec., 244 F. App'x 475, 479 (3d Cir. 2007) (citing Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999)).

    **B.**    **Determining Disability**

Pursuant to the Social Security Act, to receive DIB, a claimant must satisfy the insured status requirements of 42 U.S.C. § 423(c). In order to be eligible for Benefits, a claimant must show that she is disabled by demonstrating that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Taking into account the claimant's age, education, and work experience, disability will be evaluated by the claimant's

ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the claimant's physical or mental impairments must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." Id. §§ 423(d)(2)(A), 1382c(a)(3)(B). Decisions regarding disability will be made individually and will be "based on evidence adduced at a hearing." Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(a)(3)(D).

The SSA follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in gainful activity. Sykes, 228 F.3d at 262. Second, if she is not, the ALJ determines whether the claimant has an impairment that limits her ability to work. Id. Third, if she has such an impairment, the ALJ considers the medical evidence to determine whether the impairment is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). If it is, this results in a presumption of disability. Id. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains in spite of her impairment. Id. at 263. Fourth, the ALJ must consider whether the claimant's RFC is enough to perform her past relevant work. Id. Fifth, if her RFC is not enough, the ALJ must determine whether there is other work in the national economy that the claimant can perform. Id.

The evaluation will continue through each step unless it can be determined at any point that the claimant is or is not disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one, two, and four, upon which the burden shifts to the Commissioner at step five. Sykes, 228 F.3d at 263. Neither party bears the burden at step three. Id. at 263 n.2.

### C.     Standard For Reviewing Pro Se Filings

Because Plaintiff is a pro se litigant, her filings are "entitled to a liberal construction." See Booth v. Churner, C.O., 70 F. App'x 57, 58 (3d Cir. 2003) (citing Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2003)). This Court therefore has "a special obligation to discern both the nature of the relief" plaintiff seeks and "the appropriate law to govern [her] request." Id.

## IV.    DISCUSSION

### A.     The ALJ's Decision Is Supported By Substantial Evidence

#### 1.     Steps One And Two

After reviewing all of the evidence in the record, the ALJ determined that although Plaintiff met the insured status requirements of the Social Security Act, Plaintiff was not disabled and denied her claim for Benefits. (R. 16, 25.)

The ALJ arrived at his disability determination by following the required five-step analysis. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 14, 2009, the alleged onset date. (Id.)

At step two, the ALJ must determine whether Plaintiff suffers from a severe impairment. An impairment or combination of impairments is "not severe if it does not significantly limit [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. The ALJ properly found that Plaintiff had the following severe impairments: back pain

and obesity. (Id.) The ALJ also found that Plaintiff's sinusitis was not a severe impairment, because Plaintiff advanced no objective medical evidence to prove that it significantly limited her ability to work. (R. 17.) Specifically, the ALJ noted that in his most recent Multiple Impairment Questionnaire, Dr. Ramdas did not mention sinusitis or its effects, if any, on plaintiff's ability to work. (Id.) Plaintiff does not allege that the ALJ erred in failing to determine that sinusitis was a severe impairment. Further this Court's review of the record reveals no medical evidence indicating that Plaintiff's alleged sinusitis significantly impacted her ability to work. Thus, the ALJ's severe impairment finding is supported by substantial evidence.

### 2. Step Three

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled the requirements of any disability contained in the Listings. (R. 17.) Plaintiff does not challenge this determination. In coming to this decision, the ALJ properly considered the medical evidence regarding Plaintiff's back pain as well as the role Plaintiff's obesity should play in the analysis.

If a disorder is "at least equal in severity and duration" to a disorder in the Listings, it is medically equivalent at step three. 20 C.F.R. §§ 404.1526, 416.926. With respect to Plaintiff's back pain, the ALJ properly compared Plaintiff's spinal impairment to Listing 1.04, entitled "Disorders of the spine." (R. 17.) The ALJ found that Plaintiff's disorder was not medically equivalent because Plaintiff's November 2011 MRI did not reveal evidence of any of the Listing criteria. (R. 17, 555.) This determination is supported by substantial evidence in the record.

With respect to Plaintiff's obesity, a claimant's obesity may exacerbate other conditions as to equal the requirements of the Listings. SSR 02-1p. However, this determination must be made on the specific facts of the case. Id. Here, the ALJ considered the physical nature of Plaintiff's

9

daily activities, such as cooking, cleaning, participating in the choir, and playing with her children, as well as her testimony at the hearing that her weight has never gotten in her way of doing normal day to day activities. (R. 17, 39.) Thus, the ALJ's determination that Plaintiff's obesity did not elevate her condition to equal the Listings' requirements was supported by substantial evidence.

### 3. The ALJ's RFC Determination

Before step four, the ALJ determined that Plaintiff had the RFC to perform light work, except that Plaintiff can only occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs and never climb ropes, ladders, or scaffolds. (R. 17.) The ALJ further qualified this finding, stating that Plaintiff must avoid concentrated exposure to extreme cold and heat, wetness, humidity, fumes, odors, dusts, gases, and poor ventilation, and avoid moderate exposure to hazards, such as machinery and heights. (R. 17-18.) The ALJ pointed to the opinions of Dr. Udomsaph and Dr. Rubbani as supportive of his RFC finding. The Court agrees that these opinions support the ALJ's RFC findings.

In making this finding, the ALJ considered Plaintiff's symptoms and the extent to which these symptoms can be accepted as consistent with the objective medical evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, as well as SSRs 96-4p and 96-7p. (R. 18.) The ALJ also considered opinion evidence in accordance with the appropriate regulations. 20 C.F.R. §§ 404.1527, 416.927; SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

When considering a claimant's symptoms, an ALJ must engage in a two-step process. First, the ALJ must determine whether the claimant suffers from an underlying "medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms, such as pain." 20 C.F.R. §§ 404.1529(b), 416.929(b). Second, the ALJ must "evaluat[e] the intensity and persistence of [the claimant's] symptoms, such as pain, and determin[e] the extent to which [those]

symptoms limit [claimant's] capacity for work. Id. §§ 404.1529(c) and 416.929(c).

Here, the ALJ's opinion properly followed this two-step process. (R. 18.) The ALJ found that the claimed determinable impairments could be expected to produce Plaintiff's symptoms. (R. 22.) In the second step, however, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of those symptoms were not credible to the extent they were inconsistent with the RFC. (R. 22-23.) This credibility determination is supported by the record.

Plaintiff complains of alleged factual inaccuracies in the ALJ's report.[2] These arguments speak to (1) the ALJ's evaluation of her testimony and (2) the ALJ's determination that Dr. Ramdas' November 2011 report should be accorded little weight. The Court addresses each in turn.

In general, the ALJ properly articulated specific reasons for the weight given to Plaintiff's statements concerning the extent of her symptoms. See SSR 96-7p. The ALJ noted Plaintiff's testimony that Plaintiff normally avoids pain medication and only needs to take painkillers when she does too much. (R. 22, 45-46.) Although Plaintiff alleged she could not hold her head in a static position, the ALJ found this not credible because of her stated hobbies of crocheting and playing video games, both of which require this ability. (Id.) Although Plaintiff alleged she could not focus or concentrate due to pain, the ALJ found this not credible in part because Plaintiff is able to keep a daily journal. (Id.) The ALJ further noted Plaintiff's testimony that she could occasionally lift ten to fifteen pounds. (Id.) Finally, the ALJ considered Dr. Rubbani's findings that Plaintiff could transfer to and from the examination table, stoop without pain, and undress

---

[2] Plaintiff submitted a letter, dated January 3, 2013, with her complaint in this case. (ECF No. 1). It will be referred to as "Pl.'s Compl."

herself without assistance, (id.) as well as Dr. Udomsaph's finding that Plaintiff's allegations of severity were only partially proportionate to her impairment and partially consistent with her ability to function. (R. 22-23.) Accordingly, the ALJ's credibility determination was supported by substantial evidence.

Plaintiff raises three specific issues with respect to the ALJ's evaluation of her testimony. First, Plaintiff claims that the ALJ inaccurately stated that she attends weekly church service, occasional Bible study, and sings in the church choir. (Pl.'s Br. 1.)[3] However, at the hearing on November 17, 2012, Plaintiff testified that she still did all of these things. (R. 50-51.) Second, Plaintiff argues the ALJ inaccurately stated that she still plays video games and crochets. (Pl.'s Br. 2.) However, Plaintiff testified at the hearing that she plays video games and crochets. (R. 51-52.) Third, Plaintiff argues she did not testify that she was able to lift between ten and fifteen pounds. (Pl.'s Compl. 1.) However, Plaintiff testified that she could lift between ten and fifteen pounds. (R. 49.) Accordingly, Plaintiff's specific arguments are without merit.

Plaintiff also implicitly challenges the ALJ's determination that Dr. Ramdas' opinion should be accorded light weight because of factual inaccuracies. In general, the ALJ's conclusion that Dr. Ramdas' reports were entitled to only "light weight" is supported in the record. (R. 23.) A treating physician's opinion should control only if it is well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. SSR 96-2p. Here, the ALJ found that Dr. Ramdas' opinions were inconsistent with Plaintiff's own testimony at the hearing. (R. 23.) The ALJ noted, for example, that Dr. Ramdas' opinion that Plaintiff could not lift any weight was controverted by her testimony that she could lift ten or

---

[3] "Pl.'s Br." will refer to Plaintiff's submission to this Court dated August 26, 2013.

fifteen pounds, and that her testimony about her hobbies undercut Dr. Ramdas' opinions about her inability to focus or hold her head in one position. (R. 22.) These determinations are supported by the record.

Plaintiff specifically argues that the ALJ erred by finding that (1) Dr. Ramdas reported a tear in Plaintiff's spine in September 2009, (Pl.'s Br. 2) and (2) that Dr. Ramdas had found that she could walk, stand, or sit up to eight hours. (Pl.'s Compl. 1.) In fact, the ALJ was referencing the contents of a particular report that Dr. Ramdas made on September 10, 2009. (R. 20, 263-64.) This report contains all of the findings that Plaintiff challenges. (R. 263-64.)  Accordingly, the ALJ's credibility determinations were properly supported by substantial evidence.

### 4.      Steps Four And Five

At step four, the ALJ concluded that Plaintiff would be able to perform her past relevant work as a customer service representative, which he found was sedentary. (R. 23-24.) As an alternative holding, at step five, the ALJ found that Plaintiff would be able to perform sedentary work, and that such jobs existed in the local and national economy. (R. 24-25.) Accordingly, the ALJ concluded that Plaintiff retained the RFC to perform these jobs and was not disabled. (R. 25.)

If an ALJ poses a hypothetical to a VE that "fairly set[s] forth every credible limitation [of the claimant] established by the physical evidence," the VE's testimony as to the jobs such a person could perform is by itself substantial evidence to carry the government's burden at step five. Plummer v. Apfel, 186 F.3d 422, 431-32 (3d Cir. 1999). The hypothetical need not incorporate any alleged limitations that the ALJ has already rejected as inconsistent with the objective medical evidence as a whole. Id. at 431.

Here, the ALJ posed a hypothetical to the VE about the RFC of an individual whose list of limitations almost exactly mirrored Plaintiff's RFC. (Compare, R. 61-62 with R. 17-18.) The VE

testified that a person with those same limitations would be able to perform sedentary work that existed in the local and national economies. (R. 62.) Therefore, the ALJ's conclusion at step five was supported by substantial evidence.

### B. Remand To Introduce New Evidence Is Not Necessary

On appeal, Plaintiff seeks to rely upon an examination report that Dr. Ramdas completed on August 12, 2013,[4] after the ALJ issued his opinion. (Pl.'s Br. 2.) Additionally, Plaintiff's previous counsel submitted several documents to the Appeals Council, including an updated Multiple Impairment Questionnaire from Dr. Ramdas, dated May 4, 2012, and a list from Rite Aid pharmacy of medications prescribed to Plaintiff dated from January 1, 2011 through April 28, 2012. (R. 563-74.) Because this evidence was not considered by the ALJ, this Court will analyze these submissions as though Plaintiff were requesting that the case be remanded on the basis of new evidence. See Szubak v. Sec'y of Health &Human Servs., 745 F.2d 831, 832-33 (3d Cir. 1984). The Court finds that no remand is necessary.

When a claimant submits additional evidence to a district court that was not before the ALJ, the court may remand the case to allow such evidence to be presented if it is new, material, and "there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 45 U.S.C. § 405(g); see also Matthews v. Apfel, 239 F.3d 589, 592-93 (3d Cir. 2001). Evidence is new if it is not "merely cumulative of what is already in the record." Szubak, 745 F.2d at 833. Evidence is only "material" if there is a "reasonable possibility that [it] would have changed the outcome" of the decision below, and if it "relate[s] to the time period for which benefits were denied," rather than to "a later-acquired disability" or "the subsequent deterioration of the

---

[4] "Supp. Rpt." will refer to the August 12, 2013 report by Dr. Ramdas.

14

previously non-disabling condition." Id. For this reason, medical opinion evidence is not material if it even partially relies on observations of the claimant's condition that postdate the ALJ's hearing. Quade v. Astrue, No. 07-3390, 2008 WL 3821764, at *13 (D.N.J. Aug. 12, 2008). Finally, Plaintiff must demonstrate good cause for not previously introducing the new evidence into the administrative record. Szubak, 745 F.3d at 833. The evidence must meet these requirements even when it was previously presented to the Appeals Council and the Appeals Council denied review. Matthews, 239 F.3d at 593-94. Since the Appeals Council denied review, the additional evidence Plaintiff has submitted must meet these requirements if the case is to be remanded. (R. 1.)

This additional evidence does not warrant remand. This is because everything Plaintiff has submitted either relates to the time period after the ALJ's hearing, is cumulative of evidence already before the ALJ, or else is otherwise immaterial. Dr. Ramdas' reports from May 4, 2012 (R. 563, 569), and August 12, 2013 each indicate that they are based in part on examinations conducted after the ALJ hearing. (Supp. Rpt. 1.) On this fact alone, they are not "material." Quade, 2008 WL 3821764, at *13. Comparing these reports to the evidence before the ALJ, the Court finds that both reports largely repeat Dr. Ramdas' conclusions from the Multiple Impairment Questionnaire of November 11, 2011. (Compare, Supp. Rpt.; R. 581-87, with R. 547-54.) The ALJ "accorded light weight" to the November 11, 2011 report because it was largely inconsistent with Plaintiff's own testimony. (R. 23.) Further, the August 12 report explicitly states that the diagnosis of "tears [and] arthritis in both [of Plaintiff's] knees" and a "fallen arch [in Plaintiff's] left foot" did not onset until December of 2011, after the hearing. (Supp. Rpt. 1.)

Finally, the individual drugs in the prescription list were mostly prescribed after the ALJ hearing as well. (R. 571-74.) To the extent that particular drugs predate the hearing, Plaintiff has offered no reason why their inclusion in the record could have affected the ALJ's decision. As

such, they are immaterial. Szubak, 745 F.2d at 833.

Because all of Plaintiff's new evidence is either not new or not material, this Court need not determine whether Plaintiff had good cause for failing to present it initially, and finds that no remand is necessary.

### C. Gastric Bypass Surgery Did Not Weigh Significantly On ALJ'S Determination

Plaintiff alleges that the ALJ erroneously stated that Plaintiff underwent gastric bypass surgery in September 2007. (Pl.'s Br. 2.) The Court notes that there is no record of the surgery itself. However, there are several references in Plaintiff's medical records from July, August, and September of 2007 that she was cleared for or pending this surgery (R. 286, 335, 347, 352-53), and one reference in a medical record from May 30, 2008, stating, "s/p gastric bypass—Lost >100 lb." (R. 325.)

Even if the ALJ was incorrect that Plaintiff underwent gastric bypass, a mistaken statement of fact does not warrant reversal if the mistake is not a "critical fact" that "weighed significantly on the ALJ's determination." Holley v. Colvin, No. 12-5357, 2013 WL 5467231, at *13 (D.N.J. Sept. 30, 2013) ("This inconsistency is a minor detail that . . . is not a critical fact contributing to the ALJ's ultimate decision. . . . [T]hus, [it] is an insufficient ground for reversal."); Conklin v. Comm'r of Soc. Sec., No. 09-1450, 2010 WL 2680278, at *6 (D.N.J. June 30, 2010) (affirming because the factual "error [did] not appear to have weighed significantly on the ALJ's determination"). In this case, the ALJ did not base his determination that Plaintiff was not disabled on the fact that she underwent gastric bypass surgery, or on any subsequent weight loss she may have experienced. Accordingly, this alleged misstatement of fact would not warrant reversal.

Plaintiff's argument that the ALJ must have confused her case with that of someone else is

16

unavailing. To the extent Plaintiff's argument is based on the ALJ's alleged mistaken findings of fact, as noted above, all of these findings have some basis in the record. There is no support in the record that the ALJ mistook Plaintiff for someone else.

## V.  CONCLUSION

For the foregoing reasons, the ALJ's decision that Plaintiff is not disabled within the meaning of the Social Security Act is hereby affirmed. An appropriate order accompanies this Opinion.

DATED: February 28, 2014                         */s/ Claire C. Cecchi*
                                                                    **CLAIRE C. CECCHI, U.S.D.J.**